UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                               Case No. 8:09-CR-110-T-27AEP (Forfeiture)

EDUARDO IZQUIERDO-MARQUES
     a/k/a "Papa."
_____ /

REPORT AND RECOMMENDATION

THIS MATTER involves a dispute regarding the forfeiture of a 2007 Ford F-650 XLT Super Duty Pro-Loader Yellow Tow Truck, VIN No. 3FRNX65F17V502649 ("Tow Truck"), by Third-Party Claimant, Mirta Hernandez-Machado ("Machado"). The United States in this matter seeks to forfeit the Tow Truck because Machado voluntarily surrendered the Tow Truck in furtherance of the charged conspiracy to the Defendant, Eduardo Izquierdo-Marquez. Third-Party Claimant, Machado, asserts that she is an innocent owner and never surrendered the Tow Truck. For the reasons discussed below, the undersigned **RECOMMENDS** that the Court's Preliminary Order of Forfeiture (Dkt. No. 112) be **CONFIRMED** and that the Court enter a Final Order of Forfeiture forthwith.

**I. Procedural Background**

To put this matter in context, on March 19, 2009, the Defendant, Eduardo Izquierdo-Marquez ("Marquez") was charged along with others in a multi-count Indictment (Dkt. No. 1). Notably, Marquez was charged in Count One with participating in a multi-object conspiracy involving the cloning and interstate transportation of stolen vehicles, in violation of 18 U.S.C. §

371, and in Count Eleven with falsification and removal of a Vehicle Identification Number, in violation of 18 U.S.C. § 511. (Dkt. No. 1 at 1-12.) The Indictment also contained forfeiture allegations noticing that the United States intended to forfeit, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(5), and 28 U.S.C. § 2461(c), any property, real or personal, which represented or was traceable to the gross proceeds obtained, directly or indirectly, as a result of the charged conspiracy. (Dkt. No. 1 at 13-15.) On April 3, 2009, the United States filed a Bill of Particulars, noting that the United States intended to forfeit the Tow Truck and a backhoe. (Dkt. No. 11). On November 13, 2009, Marquez plead guilty to Counts One and Eleven of the Indictment, and on December 8, 2009, the Court accepted Marquez's plea and adjudicated him guilty. (*See* Dkt. Nos. 89 and 100.) Subsequent to Marquez's plea, the Court found that the United States had established the requisite nexus between the property sought to be forfeited (i.e. the Tow Truck), and the Count One multi-object conspiracy involving the cloning of Vehicle Identification Numbers ("VIN") and interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 371, and therefore entered a Preliminary Order of Forfeiture (Dkt. No. 112).

After entry of the Preliminary Order of Forfeiture, Third-Party Claimant, Machado, on February 18, 2010, timely filed a Petition and Request for Expedited Return of Property (Dkt. No. 124), and an Opposition to Forfeiture, Petition for Hearing to Adjudicate Validity in the Property, Petition and Request for Expedited Return of Property and Compensation for Injuries and Damages Suffered (Dkt. No. 125). In her Petition, Machado claimed to be the true and lawful owner of the Tow Truck, and alleged that the Tow Truck disappeared or was stolen from the location where it was parked. Notably, Machado attached to the Petition and Request for Expedited Return of Property a Miami-Dade Police Department Offense Incident Report, which

indicated that Machado reported the Tow Truck stolen to the police on October 9, 2008. (Dkt. No. 124.) Based upon Machado's asserted claim, and the United States' request to conduct discovery, the Court entered a Scheduling Order as to the issue surrounding the Tow Truck, and directed that discovery be completed by October 15, 2010, and that dispositive motions be filed by September 15, 2010. (Dkt. No. 151.) The United States filed a Motion for Summary Judgment (Dkt. No. 155), which was denied by the Court. (*See* Dkt. No. 160.) The United States then moved for reconsideration of the Court's denial of summary judgment, and argued that summary judgement should be entered, since Machado failed to participate in the Court directed discovery and failed to respond to the United States' Summary Judgement Motion. (Dkt. No. 162.) However, at the October 28, 2010 pretrial conference, the Court denied without prejudice the United States' Motion for Reconsideration (Dkt. No. 162), and re-opened discovery to allow Machado to respond to the United States' discovery requests (*See* Dkt. No. 163). Further, the Court directed that the parties could file any appropriate summary judgment motions at the close of the re-opened discovery period. Subsequently, the parties filed respective Summary Judgment Motions (Dkt. Nos. 167 and 177), and Machado filed three Motions to Strike (Dkt. Nos. 174, 175, 176), which were all denied by the Court. (Dkt. No. 199.) Consequently, on January 10, 2011, the Court conducted an ancillary hearing pursuant to 21 U.S.C. § 853(n) and FED. R. CRIM. P. 32.2(c).

## II. Criminal Forfeiture Standard

18 U.S.C. §§ 981(a)(1)(C), 982(a)(5), and 28 U.S.C. § 2461(c) provide in pertinent part that any property, real or personal, which constitutes, or is derived from proceeds traceable to the charged offenses in this case are subject to forfeiture by the United States. For the property to be

subject to forfeiture, the Government must establish the requisite nexus between the offense[1] and the property. FED. R. CRIM. P. 32(2)(b)(1). Any third party asserting a legal interest in such property must petition the Court for a hearing to adjudicate her interest in the property. 21 U.S.C. § 853(n) (2). Rule 32.2(c)(1) provides that a Court must hold an ancillary proceeding if a third party files a petition asserting an interest in the property. FED. R. CRIM. P. 32.2(c)(1). The Federal Rules of Evidence apply to the ancillary proceeding. FED. R. CRIM. P. 32.2 (Advisory Committee Notes 2000). Section 853(n)(5) sets out the following procedure for the hearing:

> At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. **In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.**

21 U.S.C. § 853(n)(5)(emphasis added).

The Court shall amend the order of forfeiture if the claimant establishes by a preponderance of the evidence either that:

> (A) the petitioner has a **legal right, title, or interest** in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section ....

---

[1] As noted previously, the relevant offense as identified in the Preliminary Order of Forfeiture is the multi-object conspiracy involving the cloning of Vehicle Identification Numbers ("VIN") and interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 371.

21 U.S.C. § 853(n)(6)(emphasis added).

To prevail on a third-party claim under 21 U.S.C. § 853(n)(6)(A), a petitioner must show that she had a legal interest in the property and the interest vested in the claimant instead of the defendant. *See* 21 U.S.C. § 853(n)(6)(A). However, "[a] third-party claimant ... must have more than bare legal title to the forfeited property." *United States v. Hovind*, No. 3:06cr83/MCR, 2009 WL 2369340, at *4 (N.D. Fla. July 29, 2009). In the Eleventh Circuit, possession of bare legal title without the right to exercise dominion and control over the property is insufficient to prove ownership. *See A Single Family Residence Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 630 (11th Cir. 1986).

### III. Discussion and Analysis

The United States asserts that the Tow Truck is subject to forfeiture in this case because Machado participated in this case as an un-indicted co-conspirator by voluntarily surrendering the Tow Truck to Marquez, so that it could be sold with a cloned VIN. Thus, although the United States concedes that Machado possessed legal title to the Tow Truck, the United States asserts that Machado only retained bare legal title. At the January 10, 2011 hearing, the only evidence presented by Machado was her own testimony. In essence, Machado testified that she never voluntarily surrendered the Tow Truck to anyone, and adamantly expressed that the Tow Truck was stolen from her place of business. Specifically, Machado stated that at around 10:30 P.M., on October 7, 2008, she left the Tow Truck at her place of business in Miami, Florida, secured behind a locked fence. Machado further stated that at approximately 8:00 A.M., on the next morning of October 8, 2008, she arrived back at her place of business, and discovered that the lock and chain on her fence had been broken and that the Tow Truck had been stolen.

Machado added that soon after discovering that the Tow Truck was stolen she called the police on the morning of October 8, 2008, and reported the missing Tow Truck as stolen.

To contradict Machado's version of events surrounding the Tow Truck, the United States presented the testimony of Miguel Sanchez ("Sanchez"), the confidential informant in this case, as well as the testimony of Special Agent Stanley Doss of the National Insurance Crime Bureau, and Special Agent Bijan Hunter of the Federal Bureau of Investigation. Further, the United States introduced numerous documentary exhibits into the record. Significantly, Government Exhibit No. 1 is Machado's Petition and Request for Expedited Return of Property,[2] which contains the Miami-Dade Police Department Offense Incident Report regarding the alleged theft of the Tow Truck. The Offense Incident Report clearly states that Machado reported the Tow Truck stolen on October 9, 2008, at approximately 9:12 a.m.

Miguel Sanchez, in sum, testified that sometime in October 2008, during the evening hours, Marquez, along with a co-conspirator, delivered a backhoe and the Tow Truck to him at his residence in Lehigh Acres, Florida. Sanchez further testified that when Marquez delivered the Tow Truck, he asked Marquez if the Tow Truck was stolen, and Marquez told him that the female owner of the Tow Truck gave him the Tow Truck to sell with a cloned VIN, and that she would wait a day or two to report the Tow Truck as stolen. Sanchez added that he was in contact with Agent Hunter on the day of the delivery of the backhoe and Tow Truck, and that Agent Hunter and Agent Doss came out the next day to his residence to examine the vehicles.

Agent Doss, in essence, testified that on October 8, 2008, he and Agent Hunter went to Sanchez's residence to observe the backhoe and Tow Truck. Agent Doss testified that once at

---

[2] As noted previously, Machado filed this document with the Court as Dkt. No. 124.

Sanchez's residence he examined the Tow Truck's VIN to determine if it had been cloned, and he ran the VIN through a database check to determine if the Tow Truck had been reported stolen. Agent Doss indicated that based upon his database check as of October 8, 2008, the Tow Truck was not reported stolen. Last, Agent Doss noted that he later discovered that the Tow Truck was first reported stolen by Machado on October 9, 2010.

Agent Hunter testified that in October 2008, he was supervising Sanchez's contacts with Marquez in effort to obtain cloned and stolen vehicles from Marquez. Specifically, Agent Hunter testified that on October 7, 2008, he directed Sanchez to record his phone conversations with Marquez. According to Agent Hunter, the first phone call on October 7, 2008, was recorded at approximately 7:13 P.M.[3] Agent Hunter highlighted that based upon the recorded conversations it was apparent that the vehicles were en route and being delivered from Immaculee, Florida. Agent Hunter also testified that on October 8, 2008, he photographed the backhoe and Tow Truck at Sanchez's residence in Lehigh Acres, Florida.[4] Further, Agent Hunter testified that he interviewed Machado in April 2009 about the Tow Truck, and that Machado in no uncertain terms stated to him that she last saw the Tow Truck at her place of business on October 8, 2008, and that she discovered that the Tow Truck was stolen on the morning of October 9, 2008. Agent Hunter added that he specifically noted that Machado stated she last saw the Tow Truck at her place of business on October 8, 2008, because that date was significant to

---

[3] Government Exhibit Nos. 19 and 20 are transcripts of the recorded phone calls. Government Exhibit No. 19 indicates that the first phone call was made at approximately 7:06 p.m.

[4] Government Exhibit No. 7 is a photograph of the Tow Truck, and Government Exhibit No. 8 is a photograph of the backhoe.

him based upon his observations of the Tow Truck on that same date at Sanchez's residence in Lehigh Acres, Florida.  Lastly, Agent Hunter testified that he and Agent Doss took possession of the Tow Truck and backhoe from Sanchez on October 9, 2008.  Agent Hunter described that the backhoe was transported by law enforcement as it was delivered to Sanchez by Marquez, on a trailer being towed by the Tow Truck.  Agent Hunter went on to describe that due to the size of the backhoe it was difficult to drive the Tow Truck at high speeds.

Having heard the testimony at the January 10, 2011 hearing and reviewed the documentary evidence presented, the Court finds that Machado has not met her burden by a preponderance of the evidence that she has "legal right, title or interest in the property" and that such right, title or interest is superior to that of Defendant.  The core issue in this case is simply whether Machado voluntarily surrendered the Tow Truck to the Defendant, Eduardo Izquierdo-Marquez, and therefore, only maintained bare legal title in the Tow Truck with the inability to exercise dominion or control over the Tow Truck.  In this regard, the Court finds that the events regarding the timing of when the Tow Truck was last seen by Machado, and reported stolen are highly persuasive as to the ultimate issue.  Although Machado adamantly claims that she last saw the Tow Truck on October 7, 2008, and that she reported the Tow Truck as stolen on October 8, 2008, the Court simply finds her testimony wholly incredible.

First, the Miami-Dade Police Department Offense Incident Report clearly states that Machado reported the Tow Truck stolen to the police on October 9, 2008, rather than October 8, 2008.  Further, Machado stated to Special Agent Hunter during an interview in April 2009, that the she last saw the Tow Truck on October 8, 2008, secured behind a fence at her business in Miami, and that she reported the Tow Truck as stolen on October 9, 2008.  Additionally, during

8

the early stages of this litigation, Machado maintained that the she last saw the Tow Truck on October 7, 2008, and that she reported the Tow Truck as stolen on October 8, 2008. For example, on February 18, 2010, Machado filed her Petition and Request for Expedited Return of Property, along with the Miami-Dade Police Department Offense Incident Report, which clearly indicated that Machado reported the Tow Truck stolen to the police on October 9, 2008 (Dkt. No. 124). Also, Machado remained consistent in her statements about the events surrounding the Tow Truck in her July 21, 2010 deposition, during which she repeatedly confirmed that the Tow Truck was secured behind a fence at her place of business on October 8, 2008, and she discovered that the Tow Truck was stolen on the morning of October 9, 2008. *See* Government Exhibit 12 at 34 - 62 (stating e.g. "[o]n October 8th, when I left the business . . . this truck was parked in the back").

      This "original" version of events by Machado, which have her last observing the Tow Truck before it was stolen locked behind a secured fence at her place of business in Miami on October 8, 2008, simply defies plausibility in light of all the other independent and credible evidence, which compel the logical conclusion that the Tow Truck was delivered to Sanchez during the evening hours on October 7, 2008, and remained at his residence in Lehigh Acres, Florida, until it was removed by law enforcement on October 9, 2008. The Court finds that this logical conclusion was clearly not lost on Machado because despite her repeated assertions that the Tow Truck was last seen by her at her business on October 8, 2008, Machado modified her version of events after the United States filed it's original Summary Judgement Motion (Dkt. No. 155), in which the United States highlighted the implausible circumstances regarding Machado's "original" version of events. Machado plainly maintained that she last observed the Tow Truck

9

at her business on October 8, 2008, until the Court re-opened discovery and allowed the parties to file additional dispositive motions.  Specifically, Machado, on December 23, 2010, filed her Motion for Summary Judgment, in which she stated "Machado discovered the [T]ow [T]ruck was missing on October 8, 2008 . . ." (Dkt. No. 177 at 4).  Machado's modification in her version of events is obviously significant because the claim that she last observed the Tow Truck secured at her business on October 7, 2008, rather than on October 8, 2008, comports with the undeniable fact that the Tow Truck was at Sanchez's residence in Lehigh Acres, Florida on October 8, 2008.

However, the Court also finds that Machado's "modified" version of events are not credible.  As argued by the United States, it is simply not plausible that Machado last saw the Tow Truck secured at her business in Miami at approximately 10:30 p.m., on October 7, 2008, as she claims in her "modified" version of events because as demonstrated by the recorded conversations between Sanchez and Marquez the Tow Truck was already en route at approximately 7:13 P.M., and it was delivered to Sanchez in Lehigh Acres, Florida on that same evening.  Given that the distance between Machado's business in Miami, Florida, is in excess of 200 miles[5] from Sanchez's residence in Lehigh Acres, Florida, and given that the Tow Truck could not likely travel at high speeds because it was pulling the backhoe when Marquez delivered it to Sanchez, the Court simply finds that Machado's "modified" version of events are not plausible.

As such, given Machado's wholly incredible testimony and lack of any independent verification, the Court finds that Machado has not met her burden demonstrating entitlement to

---

[5] During the hearing, at the United States' request, the Court took judicial notice of the distance between Immaculee, Florida and Lehigh Acres, Florida.

the Tow Truck. On the other hand, the United States has presented testimonial and documentary evidence circumstantially demonstrating that Machado voluntarily surrendered the Tow Truck to Marquez in furtherance of the charged conspiracy. Accordingly, for the reasons set forth above, it is **RECOMMENDED** that the Court's Preliminary Order of Forfeiture (Dkt. No. 112) be **CONFIRMED** and that the Court enter a Final Order of Forfeiture forthwith.

**Done and Ordered** at Tampa, Florida this 28th day of January, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

Copies furnished to:

Counsel of Record

Third Party Claimant